UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------------X

THOMAS RAE,

                        Plaintiff,

      - against -

COUNTY OF SUFFOLK, SUFFOLK COUNTY
POLICE DEPARTMENT, TRACEY ANNE
BARRY-RAE, in her individual capacity and in
her capacity as a Suffolk County Police Officer,
and PATRICK STEWART, in his individual
capacity and in his capacity as a Suffolk County
Police Officer, and GEORGE VOIGHT, in his
individual capacity and in his capacity as a
Suffolk County Police Officer, and JOHN
WALTERS, in his individual capacity and in his
capacity as a Suffolk County Police Officer, and
JOHN DOES #1, #2, #3, #4, #5, in their individual
capacities and in their capacities as Suffolk County
Police Officers, and RICHARD DORMER,
SUFFOLK COUNTY POLICE COMMISSIONER,

                       Defendants.

                             **MEMORANDUM & ORDER**
                             07-CV-2738 (RRM)(ARL)

---------------------------------------------------------------X

**MAUSKOPF, United States District Judge.**

      Plaintiff Thomas Rae brings this action under 42 U.S.C. §§ 1983 and 1988 alleging that

Defendants the County of Suffolk (the "County"), the Suffolk County Police Department (the

"SCPD"), Patrick Stewart, George Voight, John Does #1-5, and Richard Dormer, Suffolk County

Police Commissioner (collectively, the "County Defendants"), and Tracey Anne Barry-Rae,

violated his rights under the United States Constitution by falsely arresting him and maliciously

prosecuting him for the alleged rape of his estranged wife, Defendant Barry-Rae.[1] Plaintiff also asserts state-law claims of malicious prosecution against all Defendants, and a state-law abuse of process claims against Defendant Barry-Rae alone. Defendants Barry-Rae, Stewart, and Voight are, and were at the time of the events in question, all employees of the SCPD. The County Defendants now move for summary judgment on the grounds that (1) Plaintiff's arrest and subsequent prosecution were based on probable cause, or in the alternative, that the individual Defendants are entitled to qualified immunity, (2) that Plaintiff may not present an Eighth Amendment claim in this case, and (3) that Plaintiff has not presented a valid due process claim. Defendant Barry-Rae moves for summary judgment on the grounds that (1) she was acting as a civilian at the time she complained of Plaintiff's conduct, and therefore cannot be held liable for false arrest or malicious prosecution, and (2) that Plaintiff had offered no evidence to show that she made her complaint for any improper reason, *i.e.*, for any purpose other than having Plaintiff arrested for the alleged crime of rape. For the reasons set forth below, the Court grants the County Defendants' motion for summary judgment and dismisses all of the claims against them. The Court grants Defendant Barry-Rae's motion in part, dismissing Plaintiff's § 1983 claims,

---

[1] Specifically, Plaintiff brings claims for violation of his Fourth Amendment right to be free from unlawful seizure of his person, his Fifth Amendment and Fourteenth Amendment rights to due process of law, and his Eighth Amendment right to be free from cruel and unusual punishment. (*See* Compl. (Doc. No. 1) ¶ 22.)

and declines to exercise supplemental jurisdiction over Plaintiff's state-law claims for malicious prosecution and abuse of process. These claims are therefore dismissed pursuant to 28 U.S.C. § 1367(c).

## **BACKGROUND**[2]

Defendant Tracey Ann Barry-Rae is a Police Officer in the Suffolk County Police Department. On May 6, 2006, Barry-Rae was married to the Plaintiff Thomas Rae, and both lived together in their house at 28 Andover Drive, Bohemia, New York, but the two were in the process of divorcing, and Plaintiff had moved out of the master bedroom into another bedroom in the house. On March 30, 2006, Barry-Rae secured a New York State Family Court Temporary Order of Protection against Plaintiff following an incident where she claimed they had argued, during which he pushed her down the hallway between their bedrooms, causing her to fall. Early in the morning of May 6, 2006, Plaintiff returned home, where Barry-Rae was in the master bedroom, and had sexual intercourse with Barry-Rae. The parties dispute whether that intercourse was consensual, with Plaintiff claiming that it was, and Barry-Rae claiming that she had been forcibly raped by Plaintiff.

---

[2] The following material facts are taken from the Local Rule 56.1 statements submitted by the parties and the affidavits and exhibits submitted in connection with Defendants' Motion for Summary Judgment and Plaintiff's Opposition thereto. The facts are undisputed except as noted.

The details of what exactly happened before, during, and after the intercourse are issues of vigorous dispute between the parties. Plaintiff claims that upon arriving home he knocked on Barry-Rae's door in order to continue a conversation about reconciliation. Barry-Rae claims that she was asleep when Plaintiff came home drunk and knocked heavily on her door while saying something about their dog, at which point she awoke and opened the door. Plaintiff claims that after talking with Barry-Rae for a short time, they became amorous. Barry-Rae, on the other hand, testified that Plaintiff immediately attempted to become intimate with her, but that she resisted his advances. It is undisputed that Plaintiff at some point left the bedroom to retrieve condoms from his truck, but Plaintiff and Barry-Rae testify differently as to exactly how this came to happen. Regardless, Plaintiff subsequently returned to the bedroom where he and Barry-Rae had sexual intercourse. After the intercourse, Plaintiff left Barry-Rae's bedroom and returned to his own, after which he exchanged several text messages with Barry-Rae:

Plaintiff: Good nite

Plaintiff: Good nite

Barry-Rae: Night what happens now?

Plaintiff: I don't know but as usual u start a fight maybe it was a mistake tonite I don't know by my lawyers said the only way u will drop the order is if I move out of the house

Barry-Rae: I didn't start a fight I just asked u why u suddenly wanted me now and why u have condoms

Plaintiff: ?

4

Barry-Rae:  ?

Plaintiff:  Always lookin 2 fight just can't go w it and y will u only drop the order if I move out

Plaintiff:  Always lookin 2 fight just can't go w it and y will u only drop the order if I move out

(*See* Decl. of Richard D. Winkler, Esq. (Doc. No. 61) ("Winkler Decl.") Ex. N.)

After Plaintiff left Barry-Rae's bedroom, she called her friend Jessica Cavolina and both have testified that Barry-Rae told Cavolina that she had been raped by Plaintiff. Barry-Rae also called Defendant SCPD Police Officer Patrick Stewart, with whom Barry-Rae shared a patrol car,[3] on his cell phone, and asked him to meet her at the golf course at the nearby Island Hills Country Club. At approximately 3:30 a.m., while Plaintiff was sleeping, Barry-Rae left her house and drove to meet Stewart. Once there, she told him that she had been raped by Plaintiff, her husband. Stewart then called Defendant SCPD Sergeant George Voight, and asked him to come to the scene of the meeting with Barry-Rae. Upon arrival, Voight spoke briefly with Stewart, and then interviewed Barry-Rae, who told him that she had been raped by Plaintiff.

---

[3]  While Barry-Rae and Stewart shared a patrol car (along with three other officers), they worked different shifts, overlapping at times, but not always, for a period of two hours between the afternoon shift (on which Barry-Rae and two other officers worked) and the midnight shift (on which Stewart and one other officer worked). The three day-shift officers rotated between mornings and afternoons, so that the officers working during the overlap period changed regularly. (*See* Stewart Dep. Tr. (Winkler Decl. Ex. I) at 13.)

5

Voight recalled that Barry-Rae was crying, visibly upset, and avoided eye contact with him. (Voight Dep. Tr. (Winkler Decl. Ex. J) at 35.) Voight determined that Barry-Rae was credible and that there was probable cause to arrest Plaintiff for rape. Voight testified that he based his determination on Barry-Rae's "emotional state, the fact that she fit into the criteria of what victims of sex offenses generally act like, the sum and substance of her details of the story of what occurred, and the fact that once we had all of that compiled together, and I believed her to be credible, and it fell into department guidelines,[4] that it was an arrest situation." (*Id.* at 50.)

After making the determination to arrest Plaintiff, Voight called a police dispatcher over his radio and reported that he, along with Stewart and several other Police Officers, was going to Barry-Rae's residence at 28 Andover Drive to conduct the arrest of Plaintiff for rape. Barry-Rae accompanied Stewart in his patrol car (her vehicle was left at the golf course), and provided the officers with a key to the house. She did not enter the house while the other officers and Sergeant Voight conducted the arrest of Plaintiff for rape and criminal contempt for violation of the existing order of protection. Plaintiff did not resist arrest, and was transported to the Fifth

---

[4] While the parties make much of the "must arrest" policy followed by the SCPD, (see Jeffreys' Declaration (Doc. No. 52) Ex. F), that policy does not affect this Court's evaluation of whether or not the County Defendants had probable cause for arresting Plaintiff. The policy only requires, in relevant part, that when there is probable cause to believe a felony has been committed, the suspect must be arrested even if the complainant requests otherwise. (*Id.* at 5.)

Precinct, where he gave a statement to Defendant SCPD Detective John Walters, the lead detective on the investigation into the events of May 6th, describing his account of what had transpired.

Meanwhile, Barry-Rae was transported by Stewart to the Sexual Assault Nurse Examiner (SANE) Center at Good Samaritan Hospital in West Islip, New York, where she underwent a rape examination by a nurse. The report of that examination, the SANE Exam Record, notes that Barry-Rae was bruised on her right arm, scratched on the lower abdomen, bruised on the inside of her left leg, bruised in two places on her mid-back, and that there were a cluster of scratches on her rear left shoulder. Barry-Rae also told the nurse that Plaintiff had grabbed her by her arms and legs while using his weight to hold her down.

Later on May 6, 2006, Barry-Rae was interviewed by SCPD Detective Fred Sommers, who subsequently prepared a sworn statement that Barry-Rae reviewed and signed in the presence of Detective Walters. At some point after the signing of this statement, Detective Walters also had the Electronic Investigations Unit of the SCPD download the text messages from both Plaintiff's and Barry-Rae's cell phones. On May 11, 2006, Detective Walters obtained a sworn statement from Jessica Cavolina in which she stated that she had received a telephone call from Barry-Rae the night of the alleged rape in which Barry-Rae, who was crying, told Cavolina that Plaintiff had raped her. A Suffolk County Grand Jury was convened to hear testimony concerning the rape and criminal contempt charges against Plaintiff, but returned a

7

determination of "no true bill" on both charges. Plaintiff was never convicted or imprisoned as a result of the allegations of rape made by Barry-Rae with respect to the incidents of May 6, 2006.

## **LEGAL STANDARD**

### I.    **Summary Judgment Standard**

Summary judgment is appropriate when the pleadings, depositions, interrogatories, admissions, and affidavits demonstrate that there are no genuine issues of material fact in dispute and that one party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In determining whether a genuine issue of material fact exists, the evidence of the non-movant "is to be believed" and the court must draw all "justifiable" or "reasonable" inferences in favor of the non-moving party. *Id.* at 255 (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970)); *Brosseau v. Haugen*, 543 U.S. 194, 195 n.1 (2004). Nevertheless, once the moving party has shown that there is no genuine issue as to any material fact and that it is entitled to a judgment as a matter of law, "the nonmoving party must come forward with 'specific facts showing that there is a *genuine issue for trial*,'" *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e)) (emphasis in original), and "may not rely on conclusory allegations or unsubstantiated speculation," *Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir. 1998) (citing cases). In other words, the nonmovant must offer "concrete

8

evidence from which a reasonable juror could return a verdict in his favor." *Anderson*, 477 U.S. at 256. Where "the nonmoving party bears the burden of proof at trial, summary judgment is warranted if the nonmovant fails to make a showing sufficient to establish the existence of an element essential to [its] case." *Nebraska v. Wyoming*, 507 U.S. 584, 590 (1993) (quoting *Celotex*, 477 U.S. at 322) (internal quotation marks omitted) (alteration in original). Thus, "[a] defendant moving for summary judgment must prevail if the plaintiff fails to come forward with enough evidence to create a genuine factual issue to be tried with respect to an element essential to its case." *Allen v. Cuomo*, 100 F.3d 253, 258 (2d Cir. 1996) (citing *Anderson*, 477 U.S. at 247–48).

## DISCUSSION

I. **Plaintiff's Section 1983 Claims for False Arrest Against the County Defendants**

42 U.S.C. § 1983 provides that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured.

A § 1983 claim requires the plaintiff to "allege that (1) the challenged conduct was attributable at least in part to a person who was acting under color of state law and (2) the conduct deprived the plaintiff of a right guaranteed under the Constitution of the United States." *Snider v. Dylag*, 188 F.3d 51, 53 (2d Cir. 1999). To plead a false arrest, the "plaintiff must show: (1) that defendants intended to confine h[im]; (2) that []he was conscious of h[is] confinement;

(3) that []he did not consent to be confined; and (4) that the confinement was not otherwise privileged." *Brewton v. City of New York*, 550 F. Supp. 2d 355, 363 (E.D.N.Y. 2008) (citations omitted). Probable cause "'is a complete defense to an action for false arrest.'" *Id.* (quoting *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996)). "Even absent probable cause to arrest, a police officer will be entitled to qualified immunity if he can demonstrate that there was arguable probable cause for the arrest." *Brewton*, 550 F. Supp. 2d. at 363.

A.    *Probable Cause To Arrest*

There is probable cause if "the arresting officer [has] knowledge or reasonably trustworthy information sufficient to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested." *Martinez v. Simonetti*, 202 F.3d 625, 634 (2d Cir. 2000) (internal quotations omitted). In addition, "it is well-established that a law enforcement official has probable cause to arrest if he received his information from some person, normally the putative victim or eyewitness." *Id.* (internal quotations omitted); *see also Singer v. Fulton County Sheriff*, 63 F.3d 110, 119 (2d Cir. 1995) ("An arresting officer advised of a crime by a person who claims to be the victim, and who has signed a complaint or information charging someone with the crime, has probable cause to effect an arrest absent circumstances that raise doubts as to the victim's veracity.").

"When determining whether probable cause exists courts must consider those facts available to the officer at the time of the arrest and immediately before it, as probable cause does

not require absolute certainty." *Panetta v. Crowley*, 460 F.3d 388, 395 (2d Cir. 2006) (internal quotations and citations omitted). Moreover, whether or not there is probable cause "'depends upon the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest,' and . . . the probable cause inquiry is objective rather than subjective." *Jaegly v. Couch*, 439 F.3d 149, 154 (2d Cir. 2006) (quoting *Devenpeck v. Alford*, 543 U.S. 1467, 152–53 (2004)). Thus, a court's inquiry must focus solely on the facts available to the officer at the time of arrest; facts subsequently learned, whether they tend to support or to negate the existence of probable cause are irrelevant to the false arrest claim. *See Ricciuti v. New York City Transit Auth.*, 124 F.3d 123, 128 (2d Cir. 1997).

Here, given that the County Defendants had a person, Defendant Barry-Rae, claiming to be the victim of a crime, who was willing to sign a complaint charging Plaintiff with rape, the inquiry must focus on whether there were "circumstances that raise[d] doubts" as to Barry-Rae's veracity. *Singer*, 63 F.3d at 119. Even viewing the evidence in the light most favorable to Plaintiff, he has failed to establish that there are genuine issues of material fact as to the following items upon which Voight based his decision to arrest: (1) Barry-Rae, the putative victim, told him that she had been raped by Plaintiff, (2) Barry-Rae's account of what happened made sense, (3) Barry-Rae appeared upset, and (4) Voight and the others officers who spoke with Barry-Rae believed her to be credible, based on her demeanor. Under these circumstances, Barry-Rae's veracity was not called into doubt, and there was probable cause to arrest Plaintiff.

11

The evidence offered by Plaintiff, even drawing all inference in his favor, as required, does not serve to undermine a finding of probable cause. Plaintiff has offered evidence (1) that he left Barry-Rae in her bedroom while leaving to retrieve condoms from his truck, (2) that he used a condom during intercourse, (3) that he and Barry-Rae exchanged text messages following intercourse, (4) that Barry-Rae called Stewart on her cell phone rather than calling 911, and (5) that he and Barry-Rae were in the process of divorcing and were still negotiating possession of their house. However, none of these facts, even if they were known to Voight and the other officers at the time of the arrest, suffice to negate probable cause, because they are insufficient to raise doubts as to Barry-Ray's veracity, when all of the circumstances are considered.

Furthermore, Plaintiff himself argues that Voight was *unaware* of these facts when making the decision to arrest, and so the issue before the Court becomes whether a reasonable person would have made further inquiry into Barry-Rae's allegations in these circumstances, rendering Voight's failure to do so evidence of a lack of probable cause. *See Lowth v. Town of Cheektowaga*, 82 F.3d 563, 571 (2d Cir. 1996). But, as recounted above, the undisputed facts, when viewed objectively, support a finding of probable cause, and do not undermine Barry-Rae's veracity. Plaintiff fails to explain why Stewart and Voight should have doubted her. Moreover, "the probable cause standard does not require that the arresting officer affirmatively seek out reasons to doubt the victim or a witness where none are apparent." *Parisi v. Suffolk County*, No. 04-CV-2187 (ENV)(ETB), 2009 U.S. Dist. LEXIS 112388, at *22 (E.D.N.Y. Nov. 30, 2009).

12

"'To . . . insist upon a collateral investigation into the credibility of the complainants would place an unfair burden on law enforcement officers. It would be unreasonable and impractical to require that each complainant be assessed prior to police action regarding the subject of the complaint.'" *Id.* (quoting *McDermott v. City of New York*, No. 94-CV-2145, 1995 WL 347041, at *4 (E.D.N.Y. May 30, 1995)). In *Parisi*, where the complainant's brother was a SCPD officer, the court noted "[t]hat [complainant] was related to a Suffolk police officer is not alone in any way probative of whether she was likely to claim falsely that she had been sexually assaulted." *Id.* at *23. Here, Plaintiff's suggestion that Stewart and Voight were rendered incapable of determining whether probable cause existed is similarly based on speculation, and is belied by the facts.

While, in hindsight, it may be that Voight could have asked additional questions, or conducted a fuller investigation, the role of the court is not to overly scrutinize the decisions of police officers from its vantage in chambers, long after those decisions were made, but to determine whether the officers acted reasonably and in compliance with what the law requires based on what they knew at the time. *See Panetta*, 460 F.3d at 395. Plaintiff's argument, essentially, is simply that because Stewart, Voight, and Barry-Rae knew one another as a result of being colleagues at the SCPD, the Court should infer that the investigation conducted by Stewart and Voight failed to comport with what a reasonable person would have undertaken, and that there is therefore a question of fact as to whether the County Defendants had probable cause to

13

arrest Plaintiff.[5] Because the facts, when viewed objectively, show that the SCPD had sufficient

evidence to support a finding of probable cause, this argument must be rejected. The mere fact

that the grand jury found no true bill on the charges against Plaintiff is insufficient to establish a

lack of probable cause at the time of the arrest. *See, e.g., Phillips v. Corbin*, 132 F.3d 867, 869

(2d Cir. 1998) (grand jury's refusal to indict a defendant does not establish that officers lacked

probable cause to arrest her); *Krause v. Bennett*, 887 F.2d 362, 371–72 (2d Cir. 1989) (noting that

"probable cause does not require an officer to be certain that subsequent prosecution of the

arrestee will be successful").

B.     *Qualified Immunity*

Alternatively, under the qualified-immunity doctrine, defendants can avoid liability even

if there are material questions of fact as to probable cause. *Brewton*, 550 F. Supp. 2d at 367.

"Qualified immunity shields a police officer from liability for damages if he can demonstrate that

there was arguable probable cause for the arrest." *Id.* (internal quotations and citation omitted).

"Arguable probable cause exists if either (a) it was objectively reasonable for the officer to

believe that probable cause existed, or (b) officers of reasonable competence could disagree on

---

[5] Notably, and unlike the plaintiff in *Parisi*, Plaintiff here does not allege a conspiracy between Barry-Rae and the County Defendants to frame him. Of course, Plaintiff has offered no evidence of any such conspiracy, and so such a claim would fail if alleged.

whether the probable cause test was met." *Id.* (internal quotations and citation omitted). The Second Circuit has ruled that:

> Disputes over reasonableness are usually fact questions for juries. However, in qualified immunity cases, we are not concerned with the correctness of the defendants' conduct, but rather the "objective reasonableness" of their chosen course of action given the circumstances confronting them at the scene. With this concern in mind, we have held that when the factual record is not in serious dispute . . . the ultimate legal determination whether . . . a reasonable police officer should have known he acted unlawfully is a question of law better left for the court to decide.

*Lennon v. Miller*, 66 F.3d 416, 421 (2d Cir. 1995) (citations omitted).

In this case, for the same reasons as discussed above, there can be no doubt that, at a minimum, officers of reasonable competence could disagree as to whether there was probable cause to arrest Plaintiff based solely on the accusation of Barry-Rae. As discussed above, officers are usually entitled to rely on statements by the alleged victim of a crime absent circumstances casting doubt on the victim's veracity. *See Martinez*, 202 F.3d at 634; *Singer*, 63 F.3d at 119. Even if there could be some question as to whether Barry-Rae's status as a fellow officer indicated a potential need for corroboration of her accusations prior to the arrest of Plaintiff, it is equally clear that officers of reasonable competence could disagree on the matter, therefore entitling the County Defendants to qualified immunity with respect to Plaintiff's claim of false arrest.

In light of the foregoing, the Court grants summary judgment in favor of the County Defendants on Plaintiff's false arrest claim.

15

**II.    Plaintiff's Section 1983 & State-Law Claims of Malicious Prosecution Against the County Defendants**

The County Defendants also move for summary judgment on Plaintiff's claims of malicious prosecution. A § 1983 claim for malicious prosecution requires the plaintiff to "demonstrate conduct by the defendant that is tortious under state law and that results in a constitutionally cognizable deprivation of liberty." *Kinzer v. Jackson*, 316 F.3d 139, 143 (2d Cir. 2003). A New York law malicious-prosecution claim requires the plaintiff to "show: (1) that the defendant commenced or continued a criminal proceeding against him; (2) that the proceeding was terminated in the plaintiff's favor; (3) that there was no probable cause for the proceeding; and (4) that the proceeding was instituted with malice." *Id.* Here, while the grand jury returned no true bill on the indictment, thus fulfilling the second prong of the test, the County Defendants argue that the existence of probable cause to prosecute, measured at the time of the grand jury presentation, requires the dismissal of Plaintiff's claim.

As discussed above, this Court finds that there was probable cause for the *arrest* of Plaintiff. In these circumstances, and "'[i]n the absence of some indication that the authorities became aware of exculpatory evidence between the time of the arrest and the subsequent prosecution that would undermine the probable cause which supported the arrest, no claim for malicious prosecution may lie.'" *Parisi*, 2009 U.S. Dist. LEXIS 112388, at *34 (quoting *Williams v. City of New York*, No. 02 Civ. 3693 (CBM), 2003 U.S. Dist. LEXIS 19078, at *16 (S.D.N.Y. Oct. 23, 2003), *aff'd* 120 Fed. Appx. 388 (2d Cir. 2005)); *see also Lowth*, 82 F.3d at

571 ("In order for probable cause to dissipate, the groundless nature of the charges must be made apparent by the discovery of some intervening fact."). Therefore, to succeed on his claim of malicious prosecution, Plaintiff must show that the SCPD uncovered evidence undermining the probable cause that existed at the time of his arrest.

Plaintiff again primarily bases his arguments on the County Defendants alleged failure to conduct a reasonable investigation, rather than on facts actually known to them that would have undermined probable cause to bring Plaintiff before the grand jury. Plaintiff focuses on the following claims: (1) that the County Defendants failed to conduct a physical exam of Plaintiff following his arrest, (2) that the County Defendants decided to charge Plaintiff before examining the allegedly exculpatory text messages, and (3) that the County Defendants failed to investigate the status of Plaintiff and Barry-Rae's relationship, specifically that they were in the process of divorcing and had been arguing about Barry-Rae's attempt to get Plaintiff to move out of their house. Plaintiff also argues that the County Defendants must have actively disregarded the purportedly new evidence that Barry-Rae did not flee the house or attempt to bar Plaintiff from her bedroom after he left the house to retrieve condoms from his truck, and that she had called Stewart on his cell phone rather than calling 911.

In addition to the new evidence that Plaintiff claims undermines a finding of probable cause, it is undisputed that the SCPD gathered additional evidence relating to the alleged rape of Barry-Rae by Plaintiff between the time of Plaintiff's arrest and the grand jury presentation.

17

Specifically, (1) Barry-Rae was examined by a nurse at the SANE Center located at Good Samaritan Hospital in the hours immediately following the arrest, which examination reported that Barry-Rae was bruised on her right arm, scratched on her lower abdomen, bruised on the inside of her left leg, bruised in two places on her mid-back, and scratched on her rear left shoulder; (2) Plaintiff was interviewed by and gave a statement to Defendant Walters; (3) Barry-Rae was interviewed by and gave a sworn statement to SCPD Detective Sommers; (4) the police obtained a sworn statement from Jessica Cavolina, whom Barry-Rae had called immediately after the alleged rape; and (5) the SCPD Electronic Investigations Unit had obtained copies of the text messages exchanged between Plaintiff and Barry-Rae in the time following the alleged rape.

As noted above, the County Defendants were under no obligation to exonerate Plaintiff or to uncover exculpatory evidence, see *Krause*, 887 F.2d 371–72; instead, the question is whether either the evidence gathered after arrest undermined a finding of probable cause, or whether the County Defendants' inquiry into the alleged rape so far departed from what a reasonable person would have undertaken as to itself constitute evidence of lack of probable cause, see *Lowth*, 82 F.3d at 571. Here, the County Defendants obtained significant evidence tending to support a finding of probable cause, including the SANE report, which indicated that Barry-Rae had bruises and scratches consistent with her account of the alleged rape, and the sworn statement of an outcry witness, Jessica Cavolina. Barry-Rae also reiterated her allegations regarding the rape

in a sworn statement taken by Detective Sommers. While Plaintiff's statement to Detective Walters disputed Barry-Rae's allegations and claimed that the sex was consensual, the County Defendants were not required to credit Plaintiff's account over that of Barry-Rae. *See, e.g.*, *Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123, 128 (2d Cir. 1997) (finding that although the arresting officer would have been entitled to believe the plaintiff's version of events rather than the putative victim's, he was not required to do so). Similarly, the allegedly exculpatory text messages, while ambiguous, do not make it more or less likely that Plaintiff's version of events was true. And, again, while it is possible that the County Defendants could have conducted a more thorough inquiry, they were not required to, and the facts, even taken in the light most favorable to Plaintiff, fail to establish that a reasonable person would have done so. Plaintiff has therefore failed to dissipate the probable cause that was present at the time of his arrest, and this Court therefore holds that there was also probable cause for charging and presenting Plaintiff to the grand jury. *See Lowth*, 82 F.3d at 571. The Court therefore grants summary judgment to the County Defendants on Plaintiff's claim of malicious prosecution.

## III.     Plaintiff's Claims Against Defendant Tracey Barry-Rae

### A.     *Plaintiff's § 1983 Claims Against Barry-Rae*

Defendant Barry-Rae argues that, at the time she complained of rape by Plaintiff, she was acting solely in her capacity as a civilian. Plaintiff disputes this in conclusory fashion in his Local Rule 56.1 Response Statement, see ¶ 9, but fails to cite to any specific evidence establishing a genuine dispute of fact as to this issue. While he does cite to the Voight and

19

Stewart depositions, he does not provide any specific page or section that he relies on, and this Court's review of the transcripts, even drawing all inferences in favor of Plaintiff, does not reveal a genuine issue of material fact as to whether Barry-Rae was acting as a civilian or as an employee of the SCPD. Moreover, Plaintiff fails to address this argument in his memorandum of law in opposition to summary judgment. Accordingly, it is clear that Barry-Rae was acting as a civilian complainant, and not as a Suffolk County Police Officer.

Liability under § 1983 requires that the defendant be acting under color of state law. *Snider*, 188 F.3d at 53. "The traditional definition of acting under color of state law requires that the defendant in a § 1983 action have exercised power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *Carlos v. Santos*, 123 F.3d 61, 65 (2d Cir. 1997) (quotation marks and citations omitted). Moreover, the Second Circuit has instructed that a court should look to the overall nature of the defendant's conduct, and not merely her duty status, to determine if she was acting under the color of state law. *See Pitchell v. Callan*, 13 F.3d 545, 548 (2d Cir. 1994). Here, based on the evidence, which Plaintiff has failed to adequately controvert, the Court finds that Defendant Barry-Rae was not acting under color of state law in complaining that Plaintiff raped her. Accordingly, a § 1983 claim against her cannot lie, and she must be granted summary judgment as to Plaintiff's § 1983 claims.

*B.*     *The Court Declines To Exercise Supplemental Jurisdiction Over Plaintiff's State-Law Claims Against Barry-Rae*

Because this Court has dismissed all of Plaintiff's federal law claims, it must determine

whether to exercise supplemental jurisdiction over the remaining state-law claims under 28

U.S.C. § 1367(c). The Second Circuit has provided guidance on this issue:

> Enacted in December 1990, § 1367(c) provides, in part, that the "district courts may decline to exercise supplemental jurisdiction over a claim * * * if * * * (3) the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. 1367(c)(3). "If the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well." *Castellano v. Bd. of Trustees*, 937 F.2d 752, 758 (2d Cir. 1991). If, however, the dismissal of the federal claim occurs "late in the action, after there has been substantial expenditure in time, effort, and money in preparing the dependent claims, knocking them down with a belated rejection of supplemental jurisdiction may not be fair. Nor is it by any means necessary." 28 U.S.C.A. 1367, Practice Commentary (1993) at 835. Moreover, the discretion implicit in the word "may" in subdivision (c) of § 1367 permits the district court to weigh and balance several factors, including considerations of judicial economy, convenience, and fairness to litigants. *Castellano*, 937 F.2d at 758.

*Purgess v. Sharrock*, 33 F.3d 134, 139 (2d Cir. 1994). Here, though this action was filed several

years ago, a trial has not been scheduled, and one could be necessary to address issues germane

to state law liability that do not arise in connection with the resolution of Plaintiff's federal

claims.[6] *See N.Y. Mercantile Exchange, Inc. v. IntercontinentalExchange, Inc.*, 497 F.3d 109, 118–19 (2d Cir. 2007) (dismissing state-law claims where federal claims were dismissed before trial and resolving the state-law claims would require the resolution of additional issues of fact). Moreover all the events in question occurred in the County of Suffolk, and all parties reside in the County of Suffolk, while this Court sits in Brooklyn.[7] Accordingly, considerations of judicial economy, convenience, and fairness to litigants lead this Court to decline the exercise of supplemental jurisdiction and to dismiss Plaintiff's state-law claims against Defendant Barry-Rae pursuant to § 1367(c).

## IV. Plaintiff's Claims Against the County of Suffolk

The County Defendants have moved for summary judgment with regard to Plaintiffs' claims against the County, arguing that Plaintiff's failure to establish that any of the individual

---

[6] Notably, determining liability as to Barry-Rae requires a different analysis, and may result in a different result at this stage of the litigation, than determining liability as to the County Defendants. This is so because of the different tests for liability as well as differences in the material facts in dispute between the parties. For example, a factfinder could find Barry-Rae liable for malicious prosecution if it found that she had fabricated her claim of rape, while at the same time finding that the County Defendants were not liable on the same claim because the facts known to them still sufficed, on an objective basis, to establish probable cause, or at least arguable probable cause. Because the Court declines to exercise supplemental jurisdiction over Plaintiff's state-law claims against Barry-Rae, it need not decide this issue.

[7] In fact, the parties requested that this case be reassigned to the Central Islip courthouse after it was transferred to the undersigned in January 2008. (*See* Doc. Nos. 17–18.) That request was denied. (*See* ECF Docket Entry, June 4, 2008.)

County Defendants committed a constitutional tort means that there can be no § 1983 liability against the County.[8]

"[M]unicipalities may be sued directly under § 1983 for constitutional deprivations inflicted upon private individuals pursuant to a governmental custom, policy, ordinance, regulation, or decision." *Batista v. Rodriguez*, 702 F.2d 393, 397 (2d Cir. 1983) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978)). According to the Supreme Court, "[i]f a person has suffered no constitutional injury at the hands of the individual police officer, the fact that the departmental regulations might have *authorized* the use of constitutionally excessive force is quite beside the point." *Los Angeles v. Heller*, 475 U.S. 796, 799 (U.S. 1986). In other words, "[i]f there is no underlying constitutional violation by a municipal official, the municipality is not liable." *Khan v. Ryan*, 145 F. Supp. 2d 280, 285 (E.D.N.Y. 2001).

---

[8] While the County Defendants did not include arguments under *Monell* in their moving brief, operating under the apparently mistaken belief that Plaintiff was not pursuing any such claims, (see County Defs.' Mem. (Doc. No. 55-6) at 9 n.2), Plaintiff briefed the *Monell* claims in his opposition to summary judgment, and the County Defendants addressed them in their reply. Because no claim can lie against the County given this Court's dismissal of all claims against the individual police officer defendants, the Court addresses the *Monell* claims here in the interest of judicial economy and because Plaintiff will not be prejudiced thereby. *See Bridgeway Corp. v. Citibank*, 201 F.3d 134, 141 (2d Cir. 2000) (upholding *sua sponte* grant of summary judgment where losing party was neither without notice nor prejudiced by such grant); *see also Ramsey v. Coughlin*, 94 F.3d 71, 74 (2d Cir. 1996) (stating that a *sua sponte* grant of summary judgment is acceptable where the record reflects the losing party's inability to enhance the evidence supporting its position). Additionally, it is worth noting that Plaintiff did not argue in his opposition that he was without notice or prejudiced by this Court's consideration of his *Monell* claims on summary judgment.

Here, the Court has dismissed all of the § 1983 claims against both the police officer Defendants and Defendant Barry-Rae. Therefore, any claims of municipal liability under *Monell* as against the County must also be dismissed. Furthermore, because the Court holds that Defendant Barry-Rae was acting in her capacity as a citizen in complaining that Plaintiff raped her, the County also cannot be liable on Plaintiff's state-law claims under a theory of *respondeat superior*.[9] *See, e.g., Adorno v. Corr. Servs. Corp.*, 312 F. Supp. 2d 505, 516 (S.D.N.Y. 2004) ("[A]n employer will not be held liable under this doctrine for actions which were not taken in furtherance of the employer's interests and which were undertaken by the employee for wholly personal motives." (quoting *Galvani v. Nassau County Police Indemnification Review Bd.*, 242 A.D.2d 64, 68, (N.Y. App. Div. 2d Dep't 1998) (citations omitted)). Accordingly, summary judgment is granted to the County as to all of Plaintiff's claims.

## V.    Plaintiff's Remaining Claims

To the extent that Plaintiff attempted to allege claims based on his Eighth Amendment right to be free from cruel and unusual punishment, or his Fifth and Fourteenth Amendment rights to due process of law, those claims are deemed abandoned because Plaintiff failed to respond to any of the County Defendants' arguments in their moving brief as to why those claims

---

[9] Notably, Plaintiff, while arguing the viability of his *Monell* claims in his opposition papers, does not mention any claimed based on the theory of *respondeat superior* liability.

should be dismissed. *See, e.g., Ostroski v. Town of Southold*, 443 F. Supp. 2d 325, 340 (E.D.N.Y. 2006) ("Because plaintiff's opposition papers did not address defendant's motion for summary judgment on [plaintiff's abuse of process] claim, the claim is deemed abandoned and summary judgment should be granted on that basis alone."); *Taylor v. City of New York*, 269 F. Supp. 2d 68, 75 (E.D.N.Y. 2003) ("Federal courts may deem a claim abandoned when a party moves for summary judgment on one ground and the party opposing summary judgment fails to address the argument in any way."). Accordingly, Defendants are granted summary judgment as to Plaintiff's claims based on the Fifth, Eighth, and Fourteenth Amendments to the Constitution.

## CONCLUSION

For the foregoing reasons, it is ORDERED that the County Defendants' motion for summary judgment is GRANTED in full, and Plaintiff's claims against them are dismissed with prejudice. Defendant Barry-Rae's motion for Summary Judgment is GRANTED as to Plaintiff's § 1983 claims and any claims based on the Fifth, Eighth, and Fourteenth Amendments, which are dismissed with prejudice, and the Court declines to exercise supplemental jurisdiction over Plaintiff's state-law claims of malicious prosecution and abuse of process against Barry-Rae. Accordingly, they are DISMISSED pursuant to 28 U.S.C. § 1367(c). As this Order disposes of all of Plaintiff's claims, the Clerk of Court is directed to enter judgment in accordance with this Order and to close this case.

SO ORDERED.

Dated: Brooklyn, New York
     March 5, 2010

_____
ROSLYNN R. MAUSKOPF
United States District Judge